USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _4/1/2020____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
UNITED STATES OF AMERICA,

       -against-

WILSON PEREZ,

                      Defendant.

17 Cr. 513-3 (AT)

**ORDER**

ANALISA TORRES, District Judge:

    Wilson Perez, a prisoner serving his sentence at the Metropolitan Detention Center (the "MDC"), moves for a reduction of his term of imprisonment under the federal compassionate release statute, codified at 18 U.S.C. § 3582(c)(1)(A). Def. Letter, ECF No. 92. For the reasons stated below, Perez's motion is GRANTED.

## BACKGROUND

    On October 21, 2019, Perez pleaded guilty to kidnapping and conspiracy in violation of 18 U.S.C. § 1201. ECF No. 85. On January 2, 2020, the Court sentenced him to three years of imprisonment and two years of supervised release. ECF No. 89. "Perez has a well-documented history of medical complications which stem from injuries suffered during his incarceration." Gov't Letter at 3, ECF No. 95. While housed at the Metropolitan Correctional Center, he was the victim of two vicious beatings, resulting in a broken jaw and shattered bones around his eye socket; both attacks sent him to the hospital and necessitated reconstructive surgeries of his face, with the second surgery requiring metal implants. *See* Sentencing Tr. 9:8–18, ECF No. 74. Although Perez's physicians directed that he receive follow-up care, such care was repeatedly delayed or difficult to obtain. *See id.* 10:22–12:17. He continues to suffer from pain and persistent vision problems. Because Perez has been detained since his arrest on September 27, 2017, ECF No. 17, his prison sentence is set to terminate on April 17, 2020, Def. Letter at 1.

Perez requests release in advance of that date because he is at risk of contracting, and experiencing serious complications from, COVID-19 if he remains at the MDC. *Id.* at 1–2. He spends most of each day with a cellmate in a small cell "that is barely large enough for a single occupant," where he is "breathing recirculated air" and "unable to practice proper hygiene." *Id.* at 1. Additionally, Perez "is in pain and not receiving pain medication." *Id.* The Federal Bureau of Prisons (the "BOP") acknowledges that COVID-19 is present within the MDC. *See* COVID-19 Tested Positive Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/. The Government does not object to Perez's release on the merits, conceding that Perez has a "heightened risk of serious illness or death from COVID-19 due to his pre-existing medical issues," and that "he has less than a month remaining on his sentence." Gov't Letter at 3. But the Government questions the Court's authority to act on Perez's application, arguing that he has not exhausted the administrative remedies under § 3582(c)(1)(A), which requires that a defendant seeking compassionate release present his application to the BOP and then either (1) administratively appeal an adverse result if the BOP does not agree that his sentence should be modified, or (2) wait for 30 days to pass. Gov't Letter at 3–4.

On March 26, 2020, Perez submitted to the BOP his application for a sentence modification. ECF No. 96 at 4. To date, the BOP has not acted on that request. The Court holds, however, that Perez's exhaustion of the administrative process can be waived in light of the extraordinary threat posed—in his unique circumstances—by the COVID-19 pandemic. And the Court agrees with the parties that this threat also constitutes an extraordinary and compelling reason to reduce Perez's sentence to time served. Accordingly, Perez's motion is GRANTED.

# DISCUSSION

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i)     extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), Perez must both meet the exhaustion requirement and demonstrate that "extraordinary and compelling reasons" warrant a reduction of his sentence. The Court addresses these requirements in turn.

## I.     Exhaustion

Section 3582(c)(1)(A) imposes "a statutory exhaustion requirement" that "must be strictly enforced." *United States v. Monzon*, No. 99 Cr. 157, 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020) (citing *Theodoropoulos v. I.N.S.*, 358 F.3d 162, 172 (2d Cir. 2004) (internal quotation marks and alterations omitted)).[1] The Court may waive that requirement only if one of the recognized exceptions to exhaustion applies.

"Even where exhaustion is seemingly mandated by statute . . . , the requirement is not absolute." *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019) (citing *McCarthy v. Madigan*, 503

---

[1] The Court need not decide whether § 3582(c)'s exhaustion requirement is a jurisdictional requirement or merely a mandatory claim-processing rule. *See Monzon*, 2020 WL 550220, at *2 (describing split between courts on that question).

U.S. 140, 146–47 (1992)).[2]  There are three circumstances where failure to exhaust may be excused. "First, exhaustion may be unnecessary where it would be futile, either because agency decisionmakers are biased or because the agency has already determined the issue." *Id.*  Second, "exhaustion may be unnecessary where the administrative process would be incapable of granting adequate relief." *Id.* at 119.  Third, "exhaustion may be unnecessary where pursuing agency review would subject plaintiffs to undue prejudice." *Id.*

All three of these exceptions apply here.  "[U]ndue delay, if it in fact results in catastrophic health consequences, could make exhaustion futile.  Moreover, the relief the agency might provide could, because of undue delay, become inadequate.  Finally, and obviously, [Perez] could be unduly prejudiced by such delay." *Washington*, 925 F.3d at 120–21; *see also Bowen v. City of New York*, 476 U.S. 467, 483 (1986) (holding that irreparable injury justifying the waiver of exhaustion requirements exists where "the ordeal of having to go through the administrative process may trigger a severe medical setback" (internal quotation marks, citation, and alterations omitted)); *Abbey v. Sullivan*, 978 F.2d 37, 46 (2d Cir. 1992) ("[I]f the delay attending exhaustion would subject claimants to deteriorating health, . . . then waiver may be appropriate."); *New York v. Sullivan*, 906 F.2d 910, 918 (2d Cir. 1990) (holding that waiver was appropriate where "enforcement of the exhaustion requirement would cause the claimants irreparable injury" by risking "deteriorating health, and possibly even . . . death").  Here, even a few weeks' delay carries the risk of catastrophic health consequences for Perez.  The Court concludes that requiring him to exhaust administrative

---

[2] The Supreme Court has stressed that for "a statutory exhaustion provision . . . Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to." *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016).  Even when faced with statutory exhaustion requirements, however, the Supreme Court has allowed claims to proceed notwithstanding a party's failure to complete the administrative review process established by the agency "where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate," so long as the party presented the claim to the agency. *Mathews v. Eldridge*, 424 U.S. 319, 330 (1976).  That reasoning explains the Second Circuit's holding that even statutory exhaustion requirements are "not absolute." *Washington*, 925 F.3d at 118.  Perez has presented his claim to the BOP, *see* ECF No. 96 at 1, so the situation here is analogous.

4

remedies, given his unique circumstances and the exigency of a rapidly advancing pandemic, would result in undue prejudice and render exhaustion of the full BOP administrative process both futile and inadequate.

To be sure, "the policies favoring exhaustion are most strongly implicated" by challenges to the application of existing regulations to particular individuals. *Pavano v. Shalala*, 95 F.3d 147, 150 (2d Cir. 1996) (internal quotation marks, citation, and alterations omitted). Ordinarily, requests for a sentence reduction under § 3582(c) would fall squarely into that category. But "courts should be flexible in determining whether exhaustion should be excused," *id.* at 151, and "[t]he ultimate decision of whether to waive exhaustion . . . should also be guided by the policies underlying the exhaustion requirement." *Bowen*, 476 U.S. at 484. The provision allowing defendants to bring motions under § 3582(c) was added by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018), in order to "increas[e] the use and transparency of compassionate release." 132 Stat. 5239. Requiring exhaustion generally furthers that purpose, because the BOP is best situated to understand an inmate's health and circumstances relative to the rest of the prison population and identify "extraordinary and compelling reasons" for release. 18 U.S.C. § 3582(c)(1)(A)(i). In Perez's case, however, administrative exhaustion would defeat, not further, the policies underlying § 3582(c).

Here, delaying release amounts to denying relief altogether. Perez has less than three weeks remaining on his sentence, and pursuing the administrative process would be a futile endeavor; he is unlikely to receive a final decision from the BOP, and certainly will not see 30 days lapse before his release date. Perez asks that his sentence be modified so that he can be released now, and not on April 17, 2020, because remaining incarcerated for even a few weeks increases the risk that he will contract COVID-19. He has had two surgeries while incarcerated, and continues to suffer severe side effects such as ongoing pain and persistent vision problems. ECF No. 96 at 4. As the Government

5

concedes, Perez faces a "heightened risk of serious illness or death from COVID-19 due to his pre-existing medical issues." Gov't Letter at 3. Requiring exhaustion, therefore, would be directly contrary to the purpose of identifying and releasing individuals whose circumstances are "extraordinary and compelling."

Accordingly, the Court holds that Perez's undisputed fragile health, combined with the high risk of contracting COVID-19 in the MDC, justifies waiver of the exhaustion requirement.[3]

II. Extraordinary and Compelling Reasons for Release

The Court also finds that Perez has set forth "extraordinary and compelling reasons" to reduce his sentence to time served. 18 U.S.C. § 3582(c)(1)(A)(i). The Government does not dispute that Perez has done so. Gov't Letter at 3. And Perez's medical condition, combined with the limited time remaining on his prison sentence and the high risk in the MDC posed by COVID-19, clears the high bar set by § 3582(c)(1)(A)(i).

The authority to define "extraordinary and compelling reasons" has been granted to the United States Sentencing Commission, which has defined that term at U.S.S.G. § 1B1.13, comment n.1. *See United States v. Ebbers*, No. 02 Cr. 11443, 2020 WL 91399, at *4–5 (S.D.N.Y. Jan. 8, 2020). Two components of the definition are relevant. First, extraordinary and compelling reasons for modification exist where "[t]he defendant is . . . suffering from a serious physical or medical condition . . . that substantially diminishes the ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13

---

[3] A number of courts have denied applications for sentence modification under § 3582(c)(1)(A) brought on the basis of the risk posed by COVID-19 on the ground that the defendants failed to exhaust administrative remedies. *See, e.g., United States v. Zywotko*, No. 2:19 Cr. 113, 2020 WL 1492900, at *1 (M.D. Fla. Mar. 27, 2020); *United States v. Garza*, No. 18 Cr. 1745, 2020 WL 1485782, at *1 (S.D. Cal. Mar. 27, 2020); *United States v. Eberhart*, No. 13 Cr. 00313, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020); *United States v. Hernandez*, No. 19 Cr. 834, 2020 WL 1445851, at *1 (S.D.N.Y. Mar. 25, 2020); *United States v. Gileno*, No. 19 Cr. 161, 2020 WL 1307108, at *3 (D. Conn. Mar. 19, 2020). But in several of those cases, the defendant was not in a facility where COVID-19 was spreading, and in none of them did the defendant present compelling evidence that his medical condition put him at particular risk of experiencing deadly complications from COVID-19. In this case, unlike those, Perez has established that enforcing the exhaustion requirement carries the real risk of inflicting severe and irreparable harm to his health.

comment n.1(A)(ii).  Perez's recent surgeries, and his persistent pain and vision complications, satisfy that requirement.  Confined to a small cell where social distancing is impossible, Perez cannot provide self-care because he cannot protect himself from the spread of a dangerous and highly contagious virus.  And although he may recover in the future from the surgeries and their complications, there is no defined timeline for that recovery; certainly, he is not expected to recover within the remainder of his sentence.

The Honorable Lorna G. Schofield recently granted an application for sentence reduction under § 3582(c) under similar circumstances.  *See United States v. Campagna*, No. 16 Cr. 78-01, 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020).  Judge Schofield approved the request of a defendant confined to the Brooklyn Residential Reentry Center (the "RCC") stating that his "compromised immune system, taken in concert with the COVID-19 public health crisis, constitutes an extraordinary and compelling reason to modify [d]efendant's sentence on the grounds that he is suffering from a serious medical condition that substantially diminishes his ability to provide self-care within the environment of the RCC."  *Id.* at *3 (citing U.S.S.G. § 1B1.13 comment. n.1(A)). The same justifications apply here.

Second, U.S.S.G. § 1B1.13 comment. n.1(D) authorizes release based on "an extraordinary and compelling reason other than, or in combination with, the [other] reasons described."  Perez meets this requirement as well, because he has weeks left on his sentence, is in weakened health, and faces the threat of a potentially fatal virus.  The benefits of keeping him in prison for the remainder of his sentence are minimal, and the potential consequences of doing so are extraordinarily grave.

Accordingly, the Court finds that Perez has demonstrated extraordinary and compelling reasons justifying his release.

## CONCLUSION

For the reasons stated above, Perez's motion for a reduction of his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A) is GRANTED. Perez's term of imprisonment is reduced to time served. It is ORDERED that Perez be released immediately to begin his two-year term of supervised release.

The Clerk of Court is directed to terminate the motion at ECF No. 92.

SO ORDERED.

Dated: April 1, 2020
       New York, New York

_____
ANALISA TORRES
United States District Judge